UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AARON J. ATKINSON,

                Plaintiff,

v.                                                    5:16-CV-0809
                                                        (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ          PETER W. ANTONOWICZ, ESQ.
 Counsel for Plaintiff
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.                 SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Aaron Atkinson ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

**I.     RELEVANT BACKGROUND**

    **A.     Factual Background**

Plaintiff was born in 1962 and was 51 years old on the date he filed his application. Plaintiff has at least a high school education and past work as a truck driver, dump truck driver, and hunting guide. Generally, Plaintiff alleged disability consisting of herniated discs with degenerative disc disease, emphysema, arthritis, a right rotator cuff tear, depression, and anxiety.

    **B.     Procedural History**

Plaintiff applied for Supplemental Security Income on June 12, 2013, alleging disability beginning August 1, 2002. Plaintiff's application was initially denied on September 16, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). On January 15, 2015, Plaintiff appeared at a video hearing before ALJ Lisa B. Martin. (T. 11, 28-70.) On April 24, 2015, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-25.) On June 6, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

    **C.     The ALJ's Decision**

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 13-21.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 12, 2013, the application filing date. (T. 13.) Second, the ALJ found that Plaintiff's lumbar spine disorder with associated stage-two spondylolosthesis, spina bifida accula at L5, chronic obstructive pulmonary disease, depression, and anxiety are severe impairments. (T. 13.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 14-15.) More specifically, the ALJ considered Listings

1.00 (musculoskeletal system impairments), 3.00 (respiratory disorders), 12.00 (mental disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> a full range of light work as defined in 20 C.F.R. 416.967(b), except the claimant must avoid all climbing of ladders, ropes, and scaffolding, and is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant must also avoid all dangerous work hazards (including unprotected heights and exposed machinery), all exposure to extreme heat, humidity, and cold, and all exposure to concentrated pulmonary irritants. The claimant will further need a brief (one to two minutes) change in position opportunity as often as every 30 minutes for one to two minutes. The claimant also needs a work setting requiring no more than occasional work interactions with co-workers, supervisors, and the public.

(T. 15.) Fifth, the ALJ found that Plaintiff has past work as a truck driver (medium, SVP 3), dump truck driver (medium, SVP 2), and hunting guide (very heavy, SVP 7), though the ALJ also found that Plaintiff is unable to perform this past work based on the restrictions in the RFC. (T. 19-20.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including packer, cleaner, and sorter. (T. 20-21.)

### D.    The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts two arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to properly develop the record by failing to retain the services of a consultative examiner or to contact the treating sources to either provide a consultative examination or answer questions regarding Plaintiff's specific impairments. (Dkt. No. 12, at 7-8 [Pl.'s Mem. of Law].) Within this argument, Plaintiff asserts that the ALJ was required to obtain a consultative examination because the ALJ's finding that Plaintiff had severe

3

impairments conflicted with the findings of the Single Decision Maker[1] who made the initial Agency determination of non-disability. (*Id.*)  Plaintiff implies that, had the Single Decision Maker properly found a severe impairment at that earlier stage, he would have been required to obtain a consultative examination, and so the ALJ should have obtained a consultative examination upon determining severe impairments were present. (*Id.*)

Second, Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of the treating social worker and treating nurse practitioner by failing to provide adequate reasons for discrediting these opinions and instead substituting her own opinion in place of the opinions present in the record.  (*Id.* at 8-10.)  Specifically, Plaintiff argues that the ALJ improperly rejected these opinions because the providing nurse practitioner and social worker were not classified as "medically acceptable sources" under the regulations rather than affording those opinions appropriate consideration as required by SSR 06-03p. (*Id.*)

Generally, Defendant asserts two counter-arguments in support of her motion for judgment on the pleadings.  First, Defendant argues that the ALJ was not required to seek a consultative examination or other further evidence because there was sufficient evidence in the record for her to render a finding that was supported by substantial evidence about whether or not Plaintiff was disabled.  (Dkt. No. 14, at 5-7 [Def.'s Mem. of Law].)

Second, Defendant argues that the ALJ properly evaluated the opinions in question (which were not medical opinions) because she provided adequate reasons supported by

---

[1]  "[Single Decision Makers] are 'non-physician disability examiners who may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Medick v. Colvin*, No. 5:15-CV-0341, 2017 WL 886944, at *14 (N.D.N.Y., Mar. 6, 2017) (quoting *Lozama v. Colvin*, No. 1:13-CV-0020, 2016 WL 1259411, at *5 (N.D.N.Y., Mar. 30, 2016)).

4

substantial evidence for discrediting the opinions pursuant to applicable legal standards. (*Id.* at 7-11.) As a corollary to this second argument, Defendant also argues that the ALJ was permitted to analyze and weigh the evidence when formulating her RFC assessment without relying on a specific functional opinion. (*Id*. at 10-11.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed

6

> impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.   ANALYSIS

#### A.   Whether the ALJ Failed to Adequately Develop the Record

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 5-7 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As explained above in Part I.D. of this Decision and Order, Plaintiff argues that the record in this matter was not completely developed because the ALJ never sought the assistance of a consultative examination from either a consultative examiner or one of the treating sources. (Dkt. No. 12, at 7-8 [Pl. Mem. of Law].) Plaintiff asserts that this is error because the ALJ found that Plaintiff had numerous severe impairments, a finding that conflicted with the findings of the Single Decision Maker who made the initial unfavorable determination on Plaintiff's claim. (*Id.*) Plaintiff argues that this conflict necessitated the ALJ to order a consultative examination for an assessment of Plaintiff's functional abilities.

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation

7

to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits.  *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999); citing *Draegert v. Barnhart*, 311 F.3d 468 (2d Cir. 2002), *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004)).  "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).  "The ALJ has discretion to order a consultative examination to further develop the evidentiary record."  *Cox v. Astrue*, 993 F.Supp.2d 169, 177 (N.D.N.Y. 2012) (citing *Serianni v. Astrue*, No. 6:07-CV-250, 2010 WL 786305, at *5 (N.D.N.Y., Mar. 1, 2010)); *see also* 20 C.F.R. 416.917.  "'Several courts have held . . . that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision.'"  *Cox*, 993 F.Supp.2d at 177 (quoting *Serianni*, No. 6:07-CV-250, 2010 WL 786305, at *5).  "Generally, the ALJ should order a consultative examination when 'a conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved.'"  *Id*.  "However, the ALJ 'is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination.'"  *Id*.

   As an initial matter, Plaintiff's argument that the ALJ was obligated to obtain a consultative examination due to the differences between the severity findings of the ALJ and those of the Single Decision Maker is not availing.  As this Court has noted previously, "ALJs have been instructed by the Social Security Administration that the opinions of [Single Decision Maker]s 'should not be afforded any evidentiary weight at the administrative hearing level,'

which has led numerous courts to conclude that assigning any evidentiary weight to a [Single Decision Maker]'s opinion is an error." *Robles v. Comm'r of Soc. Sec.*, No. 5:15-CV-1359, 2016 WL 7048709, at *6 (N.D.N.Y., Dec. 5, 2016) (quoting *Martin v. Astrue*, No. 10-CV-1113, 2012 WL 4107818, at *15 (N.D.N.Y., Sept. 19, 2012)). Given that the ALJ was not permitted to rely on the Single Decision Maker's assessment, there is no error in her decision to make findings contrary to that assessment, and that assessment does not create an inconsistency or gap in the record that the ALJ was required to resolve. Notably, Plaintiff does not point to any authority that indicates a consultative examination must be ordered in every case where a severe impairment is found to be present. To the contrary, the law of this Court places that particular decision within the discretion of the ALJ. *See Cox*, 993 F.Supp.2d at 177 (quoting *Serianni*, No. 6:07-CV-250, 2010 WL 786305, at *5). There is nothing to support Plaintiff's vague argument that the Agency would have been required to order a consultative examination had the Single Decision Maker found a severe impairment during the initial-stage disability determination.

Similarly, Plaintiff does not point to any authority requiring the ALJ to obtain a consultative examination when she determines there is a severe impairment causing specific functional limitations based on her review of a complete record. As Defendant correctly notes, Plaintiff's argument constitutes little more than a generic statement that the record was incomplete without pointing to any specific way in which the record was inadequate for the ALJ to render a decision without the aid of a consultative examination. Examination of the record shows treatment for Plaintiff's impairments on a regular basis throughout the period covered by the ALJ's decision, including office visits, physical therapy, pain management, and attempts at mental health treatment. The record also includes opinions from treating physician Warren Wulff, M.D., treating Nurse Practitioner Mara Morabito, F.N.P., and Melissa Smzek, L.M.S.W.-

LP.  (T. 320-21, 540-41, 586-87.)  Plaintiff himself notes in his brief that "[t]here were ample source statements assessing the plaintiff's limitations from treating sources."  (Dkt. No. 12, at 8 [Pl. Memo. of Law].)  Based on the frequency and regularity of Plaintiff's medical treatment and the presence of multiple medical source statements in the record, there is no basis for Plaintiff's assertions that the medical evidence in the record was somehow insufficient to enable the ALJ to make a determination.  Nor is there any apparent inconsistency, ambiguity, or conflict that the ALJ failed to resolve that would necessitate further development of the record.  *See Cox*, 993 F.Supp.2d at 177 (quoting *Serianni*, No. 6:07-CV-250, 2010 WL 786305, at \*5).  The ALJ discussed pertinent medical evidence, indicated the weight she accorded to each opinion in the record, and provided reasons supporting her findings. The Court does not find anything in its review of the record that would necessitate turning the ALJ's discretionary ability to order a consultative examination into a mandatory duty in this case, or that would require remand for further development of the record.

For all these reasons, the ALJ's decision not to seek a consultative examination or other further evidence was supported by substantial evidence, and remand is not required on this basis.

### B.     Whether the ALJ Erred in Evaluating the Opinion Evidence

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13, at 7-11 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

The regulations indicate that acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5).  By contrast, SSR 06-03p indicates that sources such as nurse practitioners, physician assistants, licensed

10

clinical social workers, naturopaths, chiropractors, audiologists, and therapists are considered "other sources." SSR 06-03p. In weighing opinion evidence from other sources, the ALJ should assess these opinions using factors including (1) the length of time the source has known the claimant and the frequency of treatment, (2) the consistency of the opinion with the other evidence, (3) the degree to which the source provides evidence to support the opinion and the quality of explanation provided, (4) whether the source has any specialty or expertise in the area of treatment, and (5) any other factors tending to support or refute the opinion. *Id.* However, opinions from other sources are not medical opinions that are entitled to any particular weight under the regulations. 20 C.F.R. §§ 416.1913(a), 416.927(b).

Social Worker Smzek opined on October 8, 2014 that Plaintiff had the following limitations: extreme restrictions[2] in his abilities to relate to acquaintances and familiar people; deal with the public; relate with authority figures; deal with stress; maintain attention and concentration; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability, marked restrictions[3] in his abilities to follow rules; use judgement; and function independently, and a moderate restriction[4] in his ability to maintain personal appearance. (T. 540.) Social Worker Smzek also opined that depression, fatigue, and concentration deficits would cause Plaintiff to be off-task at least 50 percent of an eight-hour

---

[2]   The form used defines an "extreme" restriction as "no ability to function in this area for any appreciable period of time during an 8 hour period of time on a daily basis." (T. 540.)

[3]   The form defines a "marked" restriction as "effectively precluded from performing the activity consistently and without interruption due to symptoms throughout an 8 hour period of time on a daily basis." (*Id.*)

[4]   The form defines a "moderate" restriction as the "individual retains the ability to sustain this activity consistently and without interruption due to symptoms throughout an 8 hour period of time despite the presence of limitations." (*Id.*)

11

block of time, would produce "good days" and "bad days," and would cause Plaintiff to likely be absent more than four days per month due to his symptoms and treatment. (T. 541.)

Nurse Practitioner Morabito opined on March 15, 2015 that, due to his spinal impairments, Plaintiff had the following restrictions: lifting and carrying ten pounds on a frequent basis; standing or walking ten minutes or less at one time and four hours or less total in an eight-hour day without a supportive device; sitting four hours or less total in an eight-hour day; occasionally balancing and kneeling; and never climbing, crouching, crawling, or stooping. (T. 586-87.) Nurse Practitioner Morabito also opined that Plaintiff would have "good days" and "bad days" due to his impairments, would likely be absent four or more times per month due to his impairments and treatment, and that, per Plaintiff's report, he would be off-task a least 25 percent of an eight-hour block of time. (T. 587.) She opined he would have no restrictions in reaching, handling, fingering, or feeling and would not need to recline his legs during the workday. (T. 586-87.)

The ALJ afforded little weight to Nurse Practitioner Morabito's opinion, finding that her restrictions were inconsistent with the record, which included a brief attempt at physical therapy and pain management care. (T. 19.) The ALJ likewise afforded little weight to the opinion from Social Worker Smzek, finding that it was not supported by the evidence in the record, including evidence that Plaintiff's treatment was partly for substance abuse rather than mental impairments and that Plaintiff was non-compliant with his prescribed mental health treatment. (*Id.*)

Plaintiff argues that the ALJ improperly rejected the opinions from Nurse Practitioner Morabito and Social Worker Smzek, asserting that the ALJ was not entitled to reject these opinions based on the fact that they were from sources who were not considered medically acceptable under the Regulations. (Dkt. No. 12, at 8-9 [Pl. Mem. of Law].) Plaintiff notes that

SSR 06-03p requires adjudicators to give appropriate consideration to opinions from these other sources. (*Id.*)

While Plaintiff is correct that the ALJ is required to consider opinions from other sources, Plaintiff's assertion that the ALJ failed to do so here is not correct. SSR 06-03p. Contrary to Plaintiff's argument, the ALJ did not reject the opinions from Nurse Practitioner Morabito and Social Worker Smzek solely because they were not medically acceptable sources. (T. 19.) Rather, the ALJ explicitly stated that she found both of these opinions were not consistent with or supported by the evidence in the record, providing specific examples in addition to the general summary of the medical treatment evidence contained previously in the ALJ's decision. (*Id.*) As Defendant correctly points out, because neither of these sources was considered to be a medically acceptable source under the regulations, the standard for assessing them was not as stringent as for assessing an opinion from a treating physician. *See Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) (specifying that the ALJ must comprehensively set forth good reasons for the weight assigned to a treating physician's opinion); *see also Saxon v. Astrue*, 781 F.Supp.2d 92, 104 (N.D.N.Y. 2011). The ALJ was not required to provide "good reasons" as she would have needed to for a treating physician, even if she was still required to evaluate these opinions using many of the same factors applicable to weighing medical opinion evidence**.**

Given that the ALJ did not need to provide "good reasons," but instead needed only to show that she had considered these other source opinions according to the appropriate factors, this Court finds the ALJ met that legal standard. The ALJ specifically indicated that she found each of the two opinions were not consistent with or supported by the treatment evidence in the record, discussed pertinent treatment evidence in her narrative, acknowledged the relationships between these sources and Plaintiff, and acknowledged their credentials and the areas and types

13

of treatment each provided.  (T. 16-19.)  The ALJ's discussion therefore satisfies the requirements for weighing opinion evidence from other sources.  SSR 06-03p.

Notably, Plaintiff does not appear to challenge the ALJ's decision to afford little weight to the opinion from Dr. Wulff in his arguments.  (Dkt. No. 12, at 8-9 [Pl. Mem. of Law].)  On March 20, 2013, Dr. Wulff opined that Plaintiff was "very limited" in his abilities to walk, stand, sit, lift, carry, push, pull, bend, and climb due to his spinal impairment.  (T. 320-31.)  Dr. Wulff specifically noted that these restrictions were expected to last only four to six months, though he also indicated that Plaintiff reported he had been experiencing back problems for more than ten years.  (T. 321.)  The ALJ afforded little weight to Dr. Wulff's opinion, noting that Dr. Wulff had just started treating Plaintiff around the time he provided the opinion and "may have been relying on [Plaintiff's] subjective reports of symptoms and limitations."  (T. 19.)  Given that Dr. Wulff opined that Plaintiff's restrictions would not last at least 12 months, his opinion does not support Plaintiff's assertions of disability and therefore this Court need not reach whether the reasons the ALJ provided for affording it little weight were sufficient, as any potential errors would be harmless.  *Ryan*, 650 F.Supp.2d at 217.

Additionally, Plaintiff asserts generally that the ALJ improperly offered her own opinion about the extent to which Plaintiff's symptoms caused limitations in place of medical opinions.  (Dkt. No. 12, at 8 [Pl. Memo. of Law].)  More specifically, Plaintiff implies that the ALJ committed error because he did not rely on any examining source opinion when deriving the RFC.  (Dkt. No. 12, at 3 [Pl. Memo. of Law].)  However, there is no legal requirement that the ALJ rely on a medical opinion in every case to formulate the RFC.  Rather, the ALJ has the responsibility of reviewing all the evidence before her, resolving inconsistencies, and making a determination consistent with the evidence as a whole.  *See Bliss v. Colvin*, No. 3:13-CV-1086,

14

2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, No. 7:12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 5:12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). The ALJ's decision shows that she considered the medical evidence in the record and formulated the RFC based on her review of that evidence. Notably, Plaintiff does not even assert that the medical treatment evidence (other than the opinion evidence, which, as already discussed, the ALJ provided proper reasons for discrediting) showed restrictions greater than what the ALJ accounted for in the RFC. In fact, while the medical evidence does show ongoing symptoms related to Plaintiff's spinal condition in particular, those symptoms and findings do not suggest that Plaintiff would be unable to perform work as expressed in the ALJ's RFC finding. Nor do the limited mental findings and treatment indicating contributing substance abuse and non-compliance with prescribed therapy suggest that Plaintiff's mental functioning was more limited. Because the ALJ provided sufficient reasons for the weight afforded to the opinion evidence and there is no indication that she failed to assess material evidence from the adequate record before her, the ALJ was entitled to resolve

15

inconsistencies between the opinion evidence and the medical evidence and to formulate the RFC without relying on any specific opinion.

For all these reasons, the ALJ's evaluation of the opinion evidence was supported by substantial evidence and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 6, 2017
Syracuse, New York

/s/ Glenn T. Suddaby
Hon. Glenn T. Suddaby
Chief U.S. District Judge